1   JAMES M. WAGSTAFFE (95535)
    MICHAEL VON LOEWENFELDT (178665)
2   **KERR & WAGSTAFFE LLP**
    100 Spear St., Suite 1800
3   San Francisco, CA 94105–1528
    Tel: (415) 371-8500
4   Fax: (415) 371-0500

5   LAWRENCE C. YEE (84208)
    HEATHER A. IRWIN (203203)
6   **OFFICE OF GENERAL COUNSEL**
    **THE STATE BAR OF CALIFORNIA**
7   180 Howard Street
    San Francisco, CA 94105-1639
8   Tel: (415) 538-2000
    Fax: (415) 538-2321
9
    Attorneys for Defendants
10  LAWRENCE J. DAL CERRO; RUSSELL WEINER;
    ALLEN BLUMENTHAL; and ROBERT HAWLEY
11

12

13                    **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15  ALAN KONIG,                          Case No. C 04-02210 MJJ

16          Plaintiff,                   **DEFENDANTS' MOTION FOR**
                                         **PARTIAL SUMMARY JUDGMENT ON**
17      v.                               **PLAINTIFF'S DUE PROCESS CLAIM;**
                                         **MEMORANDUM OF POINTS AND**
18  LAWRENCE J. DAL CERRO; RUSSELL       **AUTHORITIES IN SUPPORT**
    WEINER; ALLEN BLUMENTHAL; and        **THEREOF**
19  ROBERT HAWLEY,
                                         ─────────────────────────
20          Defendants.                  DATE:   February 8, 2005
                                         TIME:   9:30 a.m.
21                                       DEPT:   11

22                                       Hon. Martin J. Jenkins

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2 PLEASE TAKE NOTICE THAT on February 8, 2005, at 9:30 a.m., or as soon thereafter

3 as counsel may be heard, in Courtroom 11, 19th floor, of the United States Courthouse located at

4 450 Golden Gate Avenue, San Francisco, California 94102, Defendants will and do move the

5 Court to grant summary judgment in defendants' favor on the second cause of action (42 U.S.C.

6 § 1983 - due process) in plaintiff's Second Amended Complaint pursuant to Federal Rule of

7 Civil Procedure 56(b).

8 The motion is brought on the following grounds: (1) the undisputed facts show that

9 plaintiff's procedural due process claims fail as a matter of law because they do not constitute

10 any deprivation of a constitutionally protected property interest without due process, and (2)

11 defendants are entitled to qualified immunity because plaintiff's rights were not violated, his

12 alleged process rights are not clearly established, and a reasonable supervisor in defendants'

13 position would have believed plaintiff did not have a right to the process he now claims was

14 owed.

15 This motion is based on this notice, the enclosed memorandum of points and authorities,

16 the declarations of Lawrence J. Dal Cerro, Robert Hawley, Donald Steedman, and Emilia

17 Mayorga and exhibits thereto, the papers and pleadings on file, and upon such other matters as

18 may be presented to the Court at the time of the hearing.

19

20

21

22

23

24

25

26

27

28

KERR
WAGSTAFFE
LLP

C 04-02210 MJJ                                                    MOT FOR PARTIAL MSJ ON DUE PROCESS CLAIM

# **TABLE OF CONTENTS**

*Page*

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

III.  MATERIAL UNDISPUTED FACTS RELEVANT TO THIS MOTION ...................... 3

    A.   The Memorandum Of Understanding (MOU) ........................................ 3

    B.   Konig's Allegations Of Due Process Violations ..................................... 5

        1.   The Two Warning Letters regarding the *Mendez* NDC ............................ 5

        2.   The Performance Evaluation ................................................................ 6

        3.   Konig Files and then Abandons a Grievance in December 2003 ............ 8

        4.   The May 19, 2004 PIP ........................................................................ 9

        5.   The August 24, 2004 Notice of Disciplinary Action ............................. 9

IV.   DEFENDANTS ARE EACH ENTITLED TO JUDGMENT IN THEIR FAVOR ON
     KONIG'S PROCEDURAL DUE PROCESS CLAIM ................................................ 10

    A.   Konig Cannot Demonstrate Any Violation Of His Due Process Rights ............ 10

        1.   Standard for Due Process Claims Under 42 U.S.C. § 1983 .................... 10

        2.   There is No Due Process Right to a Hearing Before Receiving
            Performance Related Warnings, Evaluations, or Work
            Assignments ...................................................................................... 11

        3.   Konig's Objections to the Grievance Procedure Do Not Create a
            Claim for Violation of Procedural Due Process ..................................... 14

        4.   There is No Right to a Hearing Before Receiving *Notice* of a Three
            Day Suspension, and Konig had the Right to Grieve His
            Suspension, But Failed To Do So ......................................................... 15

        5.   Konig's Resignation Does Not Give Rise to a Claim for Procedural
            Due Process ....................................................................................... 16

        6.   Konig's Miscellaneous Unpleaded Claims also Do Not Constitute
            a Violation of Due Process .................................................................. 18

    B.   Defendants Are Entitled To Qualified Immunity In Any Event ......................... 20

        1.   Three Part Test for Qualified Immunity ............................................... 20

        2.   Konig's Alleged Right to a Hearing was Not Clearly Established ........ 20

KERR
&
WAGSTAFFE
LLP

3.   A Reasonable Supervisor Would Believe Konig had No Right to a
Prior Hearing.......................................................................................................... 21

V.   CONCLUSION................................................................................................................ 22

KERR
&
WAGSTAFFE
L.L.P

# **TABLE OF AUTHORITIES**

*Page*

## *Cases*

Anderson v. Creighton,
    483 U.S. 635 (1987)...................................................................................20

Arnett v. Kennedy,
    416 U.S. 134 (1974)...................................................................................14

Baker v. Racansky,
    887 F.3d 183 (9th Cir. 1989) .....................................................................21

Bishop v. Wood,
    426 U.S. 341 (1976).....................................................................11, 13, 18

Board of Regents of State Colleges v. Roth,
    408 U.S. 564 (1972)...................................................................................11

Brewster v. Board of Eduction of Lynwood U. School Dist.,
    149 F.3d 971 (9th Cir.1998) ................................................................16, 21

Brown v. Li,
    308 F.3d 939 (9th Cir. 2002) .....................................................................20

Carter v. Western Reserve Psychiatric Habilitation Center,
    767 F.2d 270 (6th Cir. 1985) ...............................................................12, 20

Civil Service Assoc. Local 400 v. City and County of San Francisco,
    22 Cal. 3d 552 (1978) ..........................................................................15, 21

Clemente v. United States,
    766 F.2d 1358 (9th Cir.1985) ....................................................................18

Cleveland Board of Educ. v. Loudermill,
    470 U.S. 532 (1985)...................................................................................13

Dorr v. Butte County,
    795 F.2d 875 (1986)...................................................................................18

Foster v. Haage,
    1987 WL 16979 (S.D. N.Y. Sept. 10, 1987)........................................12, 21

Fowler v. Carrollton Public Library,
    799 F.2d 976 (5th Cir. 1986) .....................................................................17

Gearhart v. Thorne,
    768 F.2d 1072 (9th Cir. 1985) .............................................................12, 15, 20

Germany v. N.Y.S. D.O.C.S.,
    2003 WL 22203724 (S.D. N.Y. Sept. 22, 2003)..................................12, 21

KERR
&
WAGSTAFFE
LLP

Goodisman v. Lytle,
   724 F.2d 818 (9th Cir.1984) .................................................................. 18

Harris v. Board of Educ.,
   105 F.3d 591 (11th Cir. 1997) ............................................................. 22

Hitchens v. Yonker,
   943 F. Supp. 408 (D. Del. 1996)..................................................... 12, 20

Hixson v. County of Alameda Sheriff's Dep't,
   1999 WL 305513 (N.D. Cal. May 12, 1999) ...................................... 17

Hudson v. Palmer,
   486 U.S. 517 (1984)............................................................................ 17

Hughes v. Whitmer,
   714 F.2d 1407 (8th Cir. 1987) .......................................................... 12

Huskey v. City of San Jose,
   204 F.3d 893 (9th Cir. 2000) ............................................................ 21

Jennings v. City of Stillwater,
   383 F.3d 1199 (10th Cir. 2004) ........................................................ 19

Lawrence v. Acree,
   665 F.2d 1319 (D.C. App. 1981) ................................................... 12, 20

Levenstein v. Salafsky,
   164 F.3d 345 (7th Cir. 1998) ............................................................ 22

Malley v. Briggs,
   475 U.S. 335 (1986)...................................................................... 20, 21

Mason v. Arizona,
   260 F. Supp. 2d 807 (D. Ariz. 2003) ................................................ 21

Mathews v. Eldridge,
   424 U.S. 319 (1976)............................................................................ 15

Munafo v. Metropolitan Transportation Authority,
   285 F.3d 201 (2d Cir. 2002)............................................................... 14

Newell v. Sauser,
   69 F.3d 115 (9th Cir. 1996) .............................................................. 21

Poole v. Spagnolo,
   2000 WL 1720217 (N.D. Ill. Nov. 16, 2000) ............................... 12, 21

Powell v. Mikulecky,
   891 F.2d 1454 (10th Cir. 1989) ........................................................ 13

Rathjen v. Litchfield,
   878 F.2d 836 (5th Cir. 1989) ............................................................ 13

KERR
&
WAGSTAFFE
LLP

Stretten v. Wadsworth Veterans Hospital,
        537 F.2d 361 (9th Cir. 1976) ......................................................................... 14

Tweedall v. Fritz,
        987 F. Supp. 1126 (S.D. Ind. 1997) ................................................ 13, 14, 17

Vinyard v. Wilson,
        311 F.3d 1340 (11th Cir. 2002) ..................................................................... 19

### *Statutes*

42 U.S.C. § 1983 .................................................................................................... 1

Cal. Bus. & Prof. Code § 6001 ............................................................................. 8

## I.    INTRODUCTION

Alan Konig, a former[1] deputy trial counsel in the State Bar's Office of the Chief Trial Counsel ("OCTC"), has brought this action against the three managers above him in the OCTC's chain of command and the State Bar's Executive Director of Human Resources.  Konig alleges two causes of action under 42 U.S.C. § 1983:  one for retaliation for over 70 supposed exercises of his first amendment rights, and one for violation of procedural due process in connection with a handful of discrete acts.  The first claim will likely be the subject of considerable discovery, and may not be ready for summary judgment until discovery closes.  The second claim, however, merely involves procedural rights – or the lack thereof – about which there can be no legitimate factual dispute.

Konig is claiming that he had a due process right to notice and an opportunity to respond before his supervisors completed a performance evaluation that, while largely positive, had a few areas of criticism.  He is also claiming that he had a due process right to notice and an opportunity to respond before his supervisors issued written warnings to him concerning his insubordination, and before they changed his job duties and placed him on a Performance Improvement Program ("PIP").  Finally, Konig claims that he had a due process right to notice and an opportunity to respond before he was notified that he would receive a three day suspension for his insubordinate conduct.  Konig is wrong on all counts.

Government employees who can only be terminated for cause have a due process right to notice and hearing before they are terminated.  They do *not* have similar rights before lesser discipline is imposed.  To the contrary, neither the governing Memorandum of Understanding ("MOU") with Konig's union nor any other source of law provides Konig with a property right that was taken away when he received a mixed review, warning letters, his PIP, or his notice of suspension.  No case has ever recognized the wildly expanded process rights Konig is claiming, and his due process claim fails as a matter of law.

---

[1]      Konig was still an employee of the State Bar when this action was filed on June 4, 2004. He resigned on October 27, 2004.

1     In addition, defendants are each entitled to qualified immunity because, given the state of

2     the law and the terms of the governing MOU, Konig's alleged rights are not clearly established

3     and reasonable managers could plainly believe they can impose this type of non-termination

4     discipline without a prior hearing.  These are questions of law, they do not depend on the merits

5     of Konig's behavior, and they are thus ready for judicial determination at this time.  Accordingly,

6     for the reasons stated here, defendants request the Court to enter summary judgment in their

7     favor on Konig's second cause of action.

8     **II.     STATEMENT OF ISSUES TO BE DECIDED**

9     Because this motion is directed at Konig's *procedural* claim, the substantive merits of his

10    repeated insubordination, disobedience, and resulting discipline are not relevant,[2] and those

11    issues will only be described sufficiently to understand the background of the procedural issues.

12    This motion requests the Court to decide the following legal issues:

> 1.    Did Konig have a right to notice and an opportunity to be heard before receiving written warnings from his supervisors concerning his insubordination, a performance evaluation, or work reassignments that did not involve a change in pay or title?
>
> 2.    Do Konig's objections to the grievance procedures established and used by the State Bar create a claim for procedural due process?
>
> 3.    Did Konig have a right to notice and a hearing before receiving notice that he would be suspended for three days at some future date, which suspension was never implemented?
>
> 4.    Were Konig's rights to procedural due process violated when he resigned without filing a grievance or requesting a pre- or post-resignation hearing?
>
> 5.    Do Konig's other miscellaneous unpleaded assertions constitute procedural due process violations?

---

[2]     As defendants understand it, Konig claims that every criticism of his performance or attitude is "false."  For purposes of this motion, the underlying merits of Konig's insubordination and other misconduct are irrelevant because the only question before the Court is what *procedural* rights Konig had *before* his supervisors' challenged conduct.  As explained below, employees simply have no due process rights to a notice and hearing before these types of evaluative or disciplinary actions are taken.  The merits of Konig's insubordination will be presented in a motion for summary judgment on the First Amendment claim after the close of discovery.

6.  Were Konig's rights to the process he is claiming, if any, clearly established such that defendants will be denied qualified immunity?

7.  Could a reasonable supervisor in defendants' shoes have believed that Konig had no right to the process he claims was owed, such that defendants are entitled to qualified immunity?

## III.  MATERIAL UNDISPUTED FACTS RELEVANT TO THIS MOTION

### A.  THE MEMORANDUM OF UNDERSTANDING (MOU)

Konig and the other Deputy Trial Counsels [DTCs] at the State Bar are members of the "Attorney Unit" and the terms of their employment are subject to the MOU between the State Bar and the Hospital and Institutional Workers' Union Local 250, SEIU, AFL-CIO/CLC ("the Union"). (Declaration of Robert Hawley In Support of Defendants' Motion for Partial Summary Judgment ("Hawley Decl."), ¶ 3 & Ex. A [hereinafter "MOU"].)  The MOU sets forth Konig's contractual procedural rights with respect to disciplinary actions.

Section 10 of the MOU governs evaluations.  Subsection B provides that "The contents of a performance evaluation shall not be subject to the grievance procedure.  The overall performance rating, however, shall be subject to the grievance procedure but only to the extent set forth in Section 22(I)." (MOU § 10.)  Section 22(I) provides that the overall rating can only be grieved if it is "Needs Improvement." (MOU § 22(I).)  The reason for this limitation is simple.  Only an overall evaluation of "Needs Improvement" will prevent an employee's step increase in salary.  (MOU § 22(c)(3).)  Any higher overall evaluation has no effect on an employee's wages. (Id.)

Section 10(B) of the MOU provides for the Bar to implement non-disciplinary PIPS: "Performance Evaluation Plans (PIPs) are not disciplinary in nature but are intended to aid the Employee in improving his/her performance.  In the event that the Employee fails to successful[ly] complete the PIP, discipline may follow." (MOU § 10(B).)

Section 16 of the MOU governs discipline.  The section defines the grounds for discipline, which include "insubordination," "inappropriate treatment of the public, members of the State Bar or other employees," "willful disobedience," and "other just cause." (MOU § 16(C).)  The MOU provides for notice and an opportunity to be heard before imposition of

1  dismissal, involuntary demotion or suspension without pay. (MOU § 16(E).)   The MOU *does*

2  *not* provide for notice or an opportunity to be heard before receiving a written warning.  (MOU

3  § 16.)

4        Finally, section 17 governs the grievance procedure.  Employees have a right to file a

5  grievance concerning "interpretation, application or enforcement" of the MOU.  (MOU § 17(B).)

6  A grievance cannot, however, be filed concerning a performance evaluation with an overall

7  rating of "meets requirements" or "work assignments and the distribution of work" (among other

8  topics not relevant here).  (MOU § 17(K).)

9        The MOU creates specific grievance procedures which first involve four levels of internal

10  meetings:

11      •  Informal meeting with first level manager

12      •  Step I:  meeting with first level manager, employee, and union steward

13      •  Step II:  meeting with office director, employee, and union steward

14      •  Step III: meeting with senior executive, HR senior executive, employee, and

15         union field representative.

16  (MOU § 17(D).)  At each Step, the employee is required to submit a written grievance, and the

17  Bar is required to provide a written response.  (Id.)  The parties may mutually agree to waive any

18  of the Steps.  (MOU § 17(F).)  If the grievance cannot be resolved at Step III, "either the

19  Employee(s) and the Union or the State Bar may make a written request for arbitration" within

20  10 days.  (MOU § 17(D)(5.)  The neutral arbitrator is chosen from a list of nine potential

21  arbitrators selected by the Federal Mediation and Conciliation Service, with each side having

22  four strikes.  (MOU § 17(D)(5)).  The arbitrator's decision is final and binding upon the State

23  Bar, the Union, and the employee.  (MOU § 17(F).)

24  //

25  //

26  //

27  //

28  //

KERR
&
WAGSTAFFE
LLP

**B.    KONIG'S ALLEGATIONS OF DUE PROCESS VIOLATIONS**

In his second amended complaint, Konig alleges discrete acts that "violated" his "due process rights."  The timing and process of each is set forth below.

### 1.    The Two Warning Letters regarding the *Mendez* NDC

On November 17, 2003, Konig filed a Notice of Disciplinary Charges ("NDC") in the *Mendez* matter.  (Declaration of Donald Steedman In Support of Defendants' Motion for Partial Summary Judgment ("Steedman Decl.") ¶ 3.)  The prior week, his Supervisor Donald Steedman had given Konig comments and changes to the draft *Mendez* NDC.  (Steedman Decl. ¶ 2 & Ex. A.)  Konig, however, did not include most of Steedman's changes in the NDC he filed. (Steedman Decl. ¶ 3.)[3]

On November 20, 2003,[4] defendant Dal Cerro (the Assistant Deputy Trial Counsel and Steedman's supervisor) and Steedman met with Konig and union representative Rob Henderson at 11:00 a.m. and presented Konig with a "Disciplinary Notice (Written Warning)".  (Declaration of Lawrence ("Jeff") Dal Cerro In Support of Defendants' Motion for Partial Summary Judgment ("Dal Cerro Decl.") ¶ 2 & Ex. A.)  The Written Warning states, in essence, that Konig had insubordinately failed to make changes to a draft Notice of Disciplinary Charges which had been requested by his supervisor, Steedman, and that he then insubordinately denied being instructed to make the changes.  (Dal Cerro Decl. Ex. A)  Konig was presented with written requirements for future corrective action,[5] and warned that "[i]f you continue to fail to follow the

_____

[3]    Defendants understand that Konig disputes whether he was "directed" to make these changes.  His position seems to be that although Steedman asked him to make the changes and he refused, he was not expressly ordered not to file the notice without Steedman's changes.  As discussed in footnote 2, the merits of that dispute are irrelevant to this motion, which solely addresses procedural rights.

[4]    Konig's Second Amended Complaint erroneously states the November 20 date as November 21.

[5]    Konig was directed to file and serve an amended Notice of Disciplinary Charges incorporating Steedman's changes by November 24, and to seek approval from his supervisor for all future pleadings or other written documents directed outside the OCTC, to continue to have

1   direction of your supervisors or otherwise engage in acts of insubordination, disobedience, or

2   disrespect, you will be subject to additional discipline, up to and including termination." (Id.)

3   Konig objected to the Written Warning, and refused to sign it. (Dal Cerro Decl. ¶ 3 & Ex. B.)

4   He also stated that he refused to comply with the direction because it was "a complete

5   fabrication." (Dal Cerro Decl. Ex. B.)

6       At the request of Konig's union representative, Dal Cerro agreed to continue the

7   requirement for filing an amended NDC in *Mendez* from November 24 until December 1, 2003.

8   (Dal Cerro Decl. ¶ 6 & Ex. E.) Konig did not, however, file an amended NDC. (Steedman Decl

9   ¶¶ 4-5 & Ex. B.) On January 6, 2004, Dal Cerro provided Konig with a Supplemental

10  Disciplinary Notice (Written Warning). (Dal Cerro Decl. ¶ 7 & Ex. F.) The second warning

11  noted that Konig had not complied with the direction in the first warning letter to file an

12  amended NDC in *Mendez*, and that such failure "constitutes a continuing course of insubordinate

13  and willfully disobedient behavior." (Dal Cerro Decl. Ex. F.)

14                  **2.      The Performance Evaluation**

15      At the November 20, 2003 meeting, Dal Cerro also gave Konig his written review for the

16  July 2002 through July 2003 period. (Dal Cerro Decl. ¶ 4 & Ex. C.) In individual categories,

17  Konig was rated as "exceed requirements" in "knowledge and skills necessary to perform the

18  job" and "quality of work," and rated as "needs improvement" in "professionalism/presentation"

19  and "communication/collaboration/team work/interpersonal skills." All other categories were

20  rated as "meets requirements," and Konig received an overall evaluation of "Meets

21  Requirements" which "[i]ndicates that the employee's achieved results consistently met a

22  satisfactory level of performance for the performance category. This is a positive rating,

23  indicating strong, fully acceptable performance." (Dal Cerro Decl. Ex. C.)

24  //

25  //

26  _____

27  his supervisor accompany him to certain conferences, and to make his professional calendar
    known to his supervisor. (Dal Cerro Decl. Ex. A.)

28

1    In the "Manager's Comments" section of the evaluation, Konig received the following

2  comments:

> During the period of his employment with the Office of the Chief Trial
> Counsel, Mr. Konig has shown himself to be a diligent worker. He
> always completes his tasks on a timely basis and obviously makes an
> effort to do a thorough job in all that he does. This year Mr. Konig
> handled several difficult matters, often involving contentious, high profile
> respondents, under difficult circumstances. His performance has resulted
> in favorable comment, including in the press and from members of
> judiciary. For his efforts in these difficult cases and a variety of other
> reasons, Mr. Konig is a valuable member of this office's staff.
>
> Mr. Konig needs to improve his interpersonal skills. During the past year
> – through July 2003 – Mr. Konig has had several antagonistic encounters
> with various individuals, including his supervisors, a State Bar Court
> judge, and several opposing counsel. While employment as a litigator can
> bring an individual into situations where conflict is unavoidable, the
> intensity and frequency of these encounters is impossible to justify.
> Furthermore, Mr. Konig has resisted coaching regarding ways to modify
> his behavior in this regard, and otherwise demonstrates an unwillingness
> even to consider the possibility that a different approach to dealing with
> conflict might produce favorable results, while saving him time and effort
> that can be expended more productively. This is of concern to the office
> primarily because it undercuts Mr. Konig's effectiveness as an advocate;
> however, it is also of concern because it undercuts team cohesiveness.
>
> Finally, Mr. Konig is encouraged to become a regular, active participant
> in office meetings and training sessions. His colleagues can learn from
> him at these sessions, and he can learn from them. While the press of
> work can serve as a convenient excuse for skipping these activities, they
> are important and Mr. Konig should allot time in his schedule to allow for
> regular attendance at these events.

(Dal Cerro Decl. Ex. C.)

Despite the numerous positive aspects of the evaluation, Konig objected to the evaluation

and refused to sign it. One of Konig's objections was to the statement that he had antagonistic

encounters with "his supervisors" during the review period. Based on his objection that the

review period ended in July and he had never had an antagonistic encounter with his then-

supervisor, Andrea Wachter, Dal Cerro deleted the two words "his supervisors" from the

evaluation before submitting it to Human Resources.[6]   (Dal Cerro Decl. ¶ 5 & Ex. D.)

---

[6]    This is what Konig refers to as the "corrected" evaluation.



### 3.  Konig Files and then Abandons a Grievance in December 2003

On December 4, 2003, Konig submitted a grievance to Dal Cerro and Hawley concerning the Warning Letter and Performance Evaluation.[7]  (Hawley Decl. ¶ 5 & Ex. D.)  The tone and content of the grievance, which is 10 pages long in single space typing, is illustrative of Konig's improper response to attempted supervision.  (Hawley Decl. Ex. E.)  On December 22, 2003, Konig submitted an addendum to his grievance, again to Dal Cerro and Hawley, based on the "corrected" performance evaluation (Dal Cerro's deletion of the words "his supervisors").  (Hawley Decl. ¶ 5 & Ex. F.)

On January 6, 2004, Konig, union representatives Robert Henderson and Robin Haffner, Dal Cerro, Steedman, and Iola Lee LaMark of Human Resources met to conduct the Step I and Step II grievance proceedings.[8]  (Dal Cerro Decl. ¶ 8.)  On January 9, 2004, Dal Cerro, Steedman and Lee-LaMark wrote to Konig rejecting his grievance.  (Dal Cerro Decl. ¶ 10 & Ex. H.)  The performance evaluation grievance was rejected because Konig received an overall "Meets

---

[7]    Konig's grievance was submitted "under protest" based on his mistaken belief that the MOU between the State Bar and the Union is "invalid" and that the State Personnel Board should have jurisdiction over his disciplinary claims.  (Hawley Decl. Ex. E.)  Konig's suggestion that the State Personnel Board has jurisdiction over discipline at the State Bar, like his other claims of self-discovered "illegality," is wholly without merit.  California Business and Professions Code section 6001, which creates the State Bar, expressly provides that the state civil service rules (which the SPB enforces) do not apply to the State Bar.  "No law of this state restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof, including, but not by way of limitation, the provisions contained … Part 1 (commencing with Section 18000) and Part 2 (commencing with Section 18500) of Division 5 [state civil service rules, including the state personnel board], of Title 2 of the Government Code, shall be applicable to the State Bar, unless the Legislature expressly so declares."  Cal. Bus. & Prof. Code § 6001.  Although Konig filed a complaint with the State Personnel Board on December 8, 2003, the State Personnel Board found that it had no jurisdiction over that complaint.  (Deposition of A. Konig pp. 265:8-266:12 & 421:10-421:21, attached as Ex. A to the Declaration of Emilia Mayorga In Support of Defendants' Motion for Partial Summary Judgment ("Mayorga Decl."); Mayorga Decl. Exs. B & C.)

[8]    As discussed above, Step I is a meeting between the Employee, the first level manager and the Union Steward.  Step II is a further meeting with the Office Director or designee, the Employee and the Union Steward.  (MOU § 17(D).)  The parties agreed that both steps could take place simultaneously in this case.  (Dal Cerro Decl. ¶ 9 & Ex. G.)  Such agreements are allowed by section 17(F) of the MOU.  (MOU § 17(F).)

KERR
&
WAGSTAFFE
LLP

1   requirements" rating and was thus not entitled to grieve the evaluation under the MOU.  The

2   Written Warning grievance was denied on its facts.  (Id.)

3          Pursuant to the MOU, to pursue his grievance Konig should have requested a Step III

4   review and then, if not settled, proceeded to arbitration.  (MOU § 17(D).)  Konig, however, made

5   a tactical decision to abandon his grievance without requesting either Step III or arbitration, and

6   not to file a grievance of the second warning letter, in the hope that a court proceeding might

7   provide a more favorable forum for his dispute.  (Konig Depo. pp. 263:21-254:4, 417:10-12,

8   419:12-21, attached as Ex. A to Mayorga Decl.; Mayorga Decl. Ex. D.)

9                        **4.      The May 19, 2004 PIP**

10         On May 19, 2004, Dal Cerro provided Konig with a "Performance Improvement

11   Program" ("PIP") "due to [his] failure to satisfactorily fulfill the requirements of [his] position."

12   (Dal Cerro Decl. ¶ 12 & Ex. I.)  The PIP was stated to "serve as a non-disciplinary corrective

13   action program designed to monitor, evaluate and improve your performance."  (Id.)  The PIP

14   listed past deficiencies in Konig's work, and provided specific direction for Konig to meet with

15   his new team leader, Alan Blumenthal, on a weekly basis for management oversight as well as

16   other changes in Konig's job assignment.  (Dal Cerro Decl. Ex. I.)  The PIP was scheduled to

17   begin on May 24, 2004 and end November 24, 2004.  (Id.)[9]

18                        **5.      The August 24, 2004 Notice of Disciplinary Action**

19         The last "due process" violation alleged by Konig was a Notice of Disciplinary Action

20   provided to him on August 24, 2004.  (Dal Cerro Decl. ¶ 14 & Ex. K.)  The notice outlines

21   Konig's failure to comply with the terms of his PIP, and in particular his failure to provide drafts

22   of a pre-trial statement in the *Stevens* matter which he had been requested to provide for some

23   time.  (Dal Cerro Decl. Ex. K.)  Konig was notified that he was removed as counsel on the

24   _____

25   [9]      As with any other criticism or attempt to supervise Konig during this period, Konig
     replied to the PIP with a 25 page memorandum (not including attachments) challenging the basis
26   for the PIP and accusing defendants of misconduct.  (Dal Cerro Decl. Ex. J.)  Again, the tone of
     Konig's communications with management speaks for itself.  Once again, however, because this
27   motion is directed at the procedural claim only, defendants will not, at this time, prove their prior
     attempts to counsel Konig or their continuing need to discipline and supervise him.
28

1  *Stevens* case and from all other court appearances, and that he should focus his efforts on

2  improving the productivity of his notice drafting.  (Id.)

3         In addition, Konig received notice of a three-day suspension and a final warning that any

4  further misbehavior could result in termination.  The suspension was *not*, however, effective

5  immediately:  "As a result the State Bar is imposing upon you a 3-day disciplinary suspension

6  without pay.  However, due to the intensity of the workload needs of the office, we are staying

7  your suspension and postponing its effectuation until a further date when the office can spare you

8  from the office."  (Id.)  Pursuant to section 16(E) of the MOU, Konig could have requested an

9  opportunity to be heard before the suspension was made effective.  (MOU § 16(E).)  He never

10  did so.  (Hawley Decl. ¶ 9; Dal Cerro Decl. ¶ 15.)  Instead, the next day, Konig informed the

11  State Bar that he was taking a leave of absence.  (Hawley Decl. ¶ 10 & Ex. G.)  He remained on

12  leave until October 27, 2004, when he emailed his resignation to defendant Dal Cerro.  (Dal

13  Cerro Decl. ¶ 16 & Ex. L.)  The anticipated suspension was thus never imposed.   (Dal Cerro

14  Decl. ¶ 17.)

15  **IV.    DEFENDANTS ARE EACH ENTITLED TO JUDGMENT IN THEIR FAVOR ON
         KONIG'S PROCEDURAL DUE PROCESS CLAIM**

16

17         **A.     KONIG CANNOT DEMONSTRATE ANY VIOLATION OF HIS DUE PROCESS RIGHTS**

18         In his Second Amended Complaint, Konig alleges that he was deprived of procedural due

19  process because Dal Cerro did not provide him with prior notice or opportunity to be heard

20  before taking the specific actions he is challenging.  (Second Amended Complaint ["SAC"]

21  ¶¶ 28-29)  Konig also alleges that there were irregularities in the grievance he started and then

22  abandoned in December 2003.  (SAC ¶ 30.)  None of these allegations establishes a due process

23  violation.

24         **1.     Standard for Due Process Claims Under 42 U.S.C. § 1983**

25         As the Court has already recognized, "[t]he cases addressing the deprivation of a

26  property interest in state employment involve either the resignation, denial of some benefit or

27  future employment, or most commonly, the termination of the plaintiff employee."  (9/16/04

28  Order p. 9:12-14.)  Konig, however, is attempting to expand that law to require a hearing before

1  any type of discipline or admonishment can be imposed.  His attempt ignores the Supreme

2  Court's clear direction that ordinary personnel decisions are not subject to federal court review:

3         The federal court is not the appropriate forum in which to review
       the multitude of personnel decisions that are made daily by public

4         agencies.  We must accept the harsh fact that numerous individual
       mistakes are inevitable in the day-to-day administration of our

5         affairs.  The United States Constitution cannot feasibly be
       construed to require federal judicial review for every such error. ...

6         The Due Process Clause of the Fourteenth Amendment is not a
       guarantee against incorrect or ill-advised personnel decisions.

7

8  Bishop v. Wood, 426 U.S. 341, 349-50 (1976).

9         Contrary to Konig's apparent belief, a public employee's right to procedural due process

10  is very limited.  To state a procedural due process claim, a plaintiff must first prove that "the

11  interest is within the Fourteenth Amendment's protection of ... property."  Board of Regents of

12  State Colleges v. Roth, 408 U.S. 564, 571 (1972).  The interest must be created by either state

13  law or contract:

14         Property interests, of course, are not created by the Constitution.
       Rather they are created and their dimensions are defined by

15         existing rules or understandings that stem from an independent
       source such as state law – rules or understandings that secure

16         certain benefits and that support claims of entitlement to those
       benefits.

17

18  Id. at 577.  "To have a property interest in a benefit, a person clearly must have more than an

19  abstract need or desire for it.  He must have more than a unilateral expectation for it.  He must,

20  instead, have a legitimate claim of entitlement to it."  Id.  As discussed below, the actions Konig

21  is challenging did not deprive him of any legitimate property interest.  As a result the due process

22  clause simply does not apply.

23        **2.**     **There is No Due Process Right to a Hearing Before Receiving**
           **Performance Related Warnings, Evaluations, or Work Assignments**

24

25         A public employer is not required to give an insubordinate employee notice and a hearing

26  before admonishing the employee in written warnings, rendering a less than favorable

27  performance evaluation, or changing the employee's job duties.  These are exactly the type of

28  day-to-day personnel decisions that are *not* subject to court review.  Bishop, 426 U.S. at 349-50.

1   The State Bar is unaware of any court *ever* finding a due process right to notice and hearing

2   before such basic acts of managerial discretion.  See Gearhart v. Thorne, 768 F.2d 1072, 1074

3   (9th Cir. 1985) ("Although Gearhart also alleges a property interest in his performance

4   evaluations, he has not alleged a constitutionally protected property interest."); Carter v. Western

5   Reserve Psychiatric Habilitation Center, 767 F.2d 270 (6th Cir. 1985) (employees who were

6   disciplined but not discharged did not state a deprivation of a property interest.); Hughes v.

7   Whitmer, 714 F.2d 1407, 1413-16 (8th Cir. 1987) (disciplinary change in job duties did not

8   involve any constitutionally protected interest); Hitchens v. Yonker, 943 F. Supp. 408, 413 (D.

9   Del. 1996) ("Trooper Hitchens may have a subjective expectancy in a fair and impartial

10  evaluation, but this subjective desire is insufficient to raise a constitutional claim."); Lawrence v.

11  Acree, 665 F.2d 1319, 1325 (D.C. App. 1981) (negative performance evaluation did not state

12  claim for deprivation of property interest).[10]

13      In addition to the absolute lack of any case law supporting his claim, Konig cannot point

14  to any provision of state law or his MOU creating the rights he claims were violated.  To the

15  contrary, the terms of the MOU clearly *do not* provide for prior notice in these circumstances.

16      First, with respect to the performance evaluations, a performance evaluation with an

17  overall rating of "meets requirements" (such as Konig received) is not subject to the grievance

18  procedure.  (MOU § 17(K).)  In other words, Konig expressly had no right to any hearing

19  _____

20  [10]    See also Germany v. N.Y.S. D.O.C.S., 2003 WL 22203724 (S.D. N.Y. Sept. 22, 2003)
        (instructor's allegations that he was denied a work assignment and the employer failed to follow

21      procedures "in a fair and impartial manner" did not state a due process claim); Poole v.
        Spagnolo, 2000 WL 1720217 *5 (N.D. Ill. Nov. 16, 2000) ("[t]here is no state or federal right to

22      perform the duties of one's liking.  Claims that lack a foundation in state law are to evanescent to
        count as 'property' interest under the Constitution. . . . Here, there is nothing in the record to

23      suggest that plaintiff had a statutory or contractual entitlement to her choice of job duties or to be
        free from the sort of treatment of which she complains, including disparaging remarks and

24      'negative' performance evaluations."); Foster v. Haage, 1987 WL 16979 *2 (S.D. N.Y. Sept. 10,
        1987) ("Foster says he was temporarily transferred and placed under more stringent supervision

25      and was not allowed to carry a weapon.  There are no allegations that he was discharged or even
        that his pay was reduced.  He has not alleged and has not even argued in his brief that the

26      disciplinary actions taken deprived him of any right secured by law, contract, or any other

27      independent source.  He was deprived of no property interest and therefore had no due process
        right to a hearing.").

28

1    challenging his evaluation.  Even if he had received an overall "needs improvement" rating,

2    Konig's right to a hearing would come *after* the evaluation was given, not before.  (MOU § 2(I).)

3          As for the change in duties, the MOU expressly states that work assignments are within

4    management's discretion and not grievable.  (MOU § 17(K).)  Similarly, the PIP is expressly *not*

5    grievable or even considered discipline.  (MOU § 10(B).)

6          The written warnings, of course, *are* grievable.  However, the MOU makes it very clear

7    that a hearing on such warnings takes place *after* the warning is given, not before.  (MOU §

8    16(E).)  And Konig abandoned his grievance concerning the first warning after Step II, and did

9    not even bring a Step I grievance concerning the second.  (Hawley Decl. ¶¶ 6-7; Dal Cerro Decl.

10   ¶ 11.)  Konig cannot choose to abandon an available grievance procedure and then complain

11   about being "denied" a process to have his discipline reviewed.  See Rathjen v. Litchfield, 878

12   F.2d 836, 840 (5th Cir. 1989) (citing cases); Tweedall v. Fritz, 987 F. Supp. 1126, 1131 (S.D.

13   Ind. 1997) (citing cases).

14         Moreover, Konig's claim misses the whole point of a written warning.  Konig *did* have a

15   due process right to notice and a hearing before *termination*.  The written warnings he has been

16   given are *part of that notice process*.  There is no right, however, to a pre-notice notice.  Powell

17   v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir. 1989) ("Nothing in [Cleveland Board of Educ. v.

18   Loudermill, 470 U.S. 532 (1985)] suggests, nor do we hold, that a public employee is entitled to

19   some type of 'pre-notification notice' of the charges against her or him.")

20         As discussed above, procedural due process rights must be grounded in some underlying

21   property right created by the terms of employment.  Here the terms of Konig's employment,

22   which are created by the MOU, do not create any right to a prior hearing in these circumstances.

23   Indeed, the State Bar is unaware of any case, in any circumstance, recognizing a due process

24   right to notice and a hearing before an employee receives a performance review, written warning,

25   or change in duties without a change in pay.  Any such rule would make it impossible to manage

26   employees, and would turn every minor workplace discipline into a federal case.  That is exactly

27   what the Supreme Court has said should not happen.  Bishop, 426 U.S. at 349-50.

28

1

### 3. Konig's Objections to the Grievance Procedure Do Not Create a Claim for Violation of Procedural Due Process

2

3  Konig also attempts to claim that the grievance proceedings he began and then

4  abandoned somehow violate his "due process" because they involved the manager about whom

5  he was complaining (Dal Cerro).[11]  (Mayorga Decl. ¶ 6 & Ex. E, p. 9, response # 13.)  That,

6  however, is the grievance process required by the MOU.  (Konig Depo. pp. 415:23-416:2,

7  attached as Ex. A to Mayorga Decl.; MOU § 17.)  Konig simply has no constitutional right to

8  exclude Dal Cerro or any other manager from the disciplinary review process or the grievance

9  process.  "There is no constitutional requirement that the decision-maker be an uninvolved

10  person when a property interest protected by due process is at stake." Stretten v. Wadsworth

11  Veterans Hospital, 537 F.2d 361, 369 n.18 (9th Cir. 1976) (citing Arnett v. Kennedy, 416 U.S.

12  134 (1974)).

13  A similar "bias" claim was rejected by the Second Circuit in Munafo v. Metropolitan

14  Transportation Authority, 285 F.3d 201 (2d Cir. 2002).  Munafo claimed that he was disciplined

15  *and then terminated* after complaining about safety problems and refusing to file certain reports.

16  Id. at 205.  Munafo claimed that the hearing procedure and officers provided by his Union

17  contract were "biased against him" and "unfair."  The court held that none of his contentions

18  "present cognizable due process claims against the individual defendants."  Id. at 214; see also

19  Tweedall, 987 F. Supp. at 1131.

20  As in Munafo, Konig's challenge to the grievance procedures established by the MOU

21  between his union and his employer does not state a due process claim.  Nor can Konig bring any

22  challenge relating to those procedures when he did not avail himself of a Step III review or the

23

24

---

25  [11]  In discovery, Konig charges that it violates due process to permit "an accuser" to serve as
26  fact finder or decision maker in any disciplinary proceeding, or participate on any panel at any
point in his grievance. (Mayorga Decl. Ex. E, p. 9, response # 13.)  In other words, Konig claims
27  that due process somehow prohibits managers from investigating or making decisions regarding
28  work related misconduct by the employees they manage.

1  neutral arbitration they provided.  Konig simply was not deprived of any property right with

2  respect to his grievance claims.

3    **4.    There is No Right to a Hearing Before Receiving *Notice* of a Three
          Day Suspension, and Konig had the Right to Grieve His Suspension,
4         But Failed To Do So**

5      The *only* action that Konig challenges in his complaint which had even a *potential*

6  monetary effect on him was the notice of three day suspension without pay.  Konig's due process

7  claim concerning that notice, however, fails for three reasons.

8      First, ***Konig was not suspended***.  He was only *notified* that he would be suspended for

9  three days at a future time.  (Dal Cerro Decl. ¶ 14 & Ex. K.)  Konig had no right to prior notice

10  that he was going to get a notice.  Because the suspension was not effectuated, Konig has not

11  been finally deprived of anything.  See Mathews v. Eldridge, 424 U.S. 319, 333-34 (1976)

12  ("some form of hearing is required before an individual is finally deprived of a property

13  interest."); Gearhart, 768 F.2d at 1073 (grievance proceedings *after* demotion and salary cut were

14  sufficient to satisfy due process because employee was able to receive reinstatement and back

15  pay).

16      Second, the California Supreme Court has held that public employees *do not* have a due

17  process right to a hearing *before* a short suspension as long as a hearing is available "either

18  during the suspension or within a reasonable time thereafter."  Civil Service Assoc. Local 400 v.

19  City and County of San Francisco, 22 Cal. 3d 552, 564 (1978).[12]  Nonetheless, the MOU

20  provides Konig with the option of a pre-suspension opportunity to respond.  Section 17(E) of the

21  MOU clearly provides, in cases of suspension without pay, for written notice and an opportunity

22  to respond "prior to the effective date of imposing said discipline."  (MOU § 17(E).)

23

_____

24  [12]    The California Supreme Court persuasively reasoned that, unlike termination, "[t]he
25  shortness of the suspension tends to demonstrate that the interim loss should not be deemed
   'substantial' … in the absence of special circumstances being indicated in a particular case.  A
26  short suspension is not a destruction of the empoyee's employment but rather is an interruption
   Usually in the event of a wrongful deprivation being shown the employee can be made whole by
27  back wages for the period of wrongful suspension."  Civil Service Assoc. Local 400, 22 Cal. 3d
   at 562.
28

1   Accordingly, Konig has been provided with the notice and opportunity to respond before his

2   suspension, even though due process only requires a *post-suspension* hearing.

3          Third, Konig chose not to file a grievance or otherwise meaningfully respond.  (Dal Cerro

4   Decl. ¶ 15; Hawley Decl. ¶ 9.)  Instead, the day after receiving the notice he left work on leave,

5   and two months later he resigned.  (Dal Cerro Decl. ¶ 16; Hawley Decl. ¶ 10.)  Konig's decision

6   not to take advantage of his opportunity for a hearing is also fatal to his due process claim.

### 5.   Konig's Resignation Does Not Give Rise to a Claim for Procedural Due Process

9          As discussed above, from August 25, 2004 until October 27, 2004 Konig was on medical

10  leave.  On October 27, Konig resigned by sending the following self-serving email to Dal Cerro:

> Please consider this to be my resignation from the position of
> deputy trial counsel at the State Bar of California.
>
> While I have enjoyed assisting former clients and others who are
> victims of attorney misconduct and feel that I have been an
> effective advocate for the protection of the public, the profession,
> and the administration of justice, actions and inactions of
> employees and agents of the State Bar have created a hostile and
> an intolerable working environment for me. These actions and
> inactions have compelled me to submit this resignation as I will
> not return to such an offensive and harassing environment.
>
> Since management at the State Bar has determined to deny me
> access to the building and my office, please advise me of a date
> and time during which I may retrieve all remaining personal
> property from my office.

20  (Dal Cerro Decl. ¶ 16 & Ex. L.) Although not pleaded in his complaint which was filed before

21  his resignation, Konig will undoubtedly claim in opposition to this motion that his "forced"

22  resignation was a deprivation of procedural due process.  Any such claim would be meritless.

23         As discussed above, "[a] procedural due process claim has two elements: 1) a deprivation

24  of a constitutionally protected property or liberty interest, and 2) a denial of adequate procedural

25  safeguards." Brewster v. Board of Eduction of Lynwood U. School Dist., 149 F.3d 971, 982 (9th

26  Cir.1998).  Although Konig's resignation was plainly voluntary and followed a two month

27  absence from work, defendants will assume for the sake of argument that Konig was "deprived"

28  of a property interest.  But what procedural safeguards was he denied?

KERR
&
WAGSTAFFE
L.L.P.

1    Defendants obviously had no obligation to provide Konig with a hearing before *Konig*

2    told *them* he was resigning.  Konig never asked for any such hearing, and did not warn

3    defendants that he was going to resign and claim "constructive discharge."  (Dal Cerro Decl. ¶

4    16; Hawley Decl. ¶¶ 9, 11.)  Moreover, Konig had a right to grieve any discipline or termination,

5    yet he failed to do so.  As discussed above, Konig abandoned his grievance of the written

6    warnings a year earlier.  (Mayorga Decl. Ex. D; Konig Depo. pp. 417:1-12, 419:12-21, attached

7    as Ex. A to Mayorga Decl.)  He never filed any subsequent grievance.  (Hawley Decl. ¶ 9.)  Nor

8    has he made any request for a hearing in relation to his resignation.  (Id.)

9    As the United State Supreme Court has noted "when deprivations of property are effected

10   through random and unauthorized conduct of a state employee, predeprivation procedures are

11   simply 'impracticable' because the state cannot know when such deprivations will occur."

12   Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Consistent with this rule, several courts have

13   rejected attempts by employees who resigned to claim that the lack of a pre-resignation hearing

14   was a violation of procedural due process.  See Hixson v. County of Alameda Sheriff's Dep't,

15   1999 WL 305513 at *13 (N.D. Cal. May 12, 1999) (Illston, J.) ("Hixson does not cite any case

16   law from this circuit (or any other circuit) that imposes a due process requirement on the

17   employer prior to the resignation of an employee who later characterizes the resignation as a

18   'constructive discharge'");  Fowler v. Carrollton Public Library, 799 F.2d 976, 980 (5th Cir.

19   1986) ("A pretermination hearing is just not feasible when the gist of the employee's claim is

20   that he was forced to resign by unbearable working conditions.").  Other courts have similarly

21   held that employees like Mr. Konig with a right to grieve employment decisions cannot choose

22   to ignore those grievance procedures and then complain about a lack of process.  See, e.g.,

23   Tweedall, 987 F. Supp. at 1131, 1134 ("Tweedall's choice to waive … the collective bargaining

24   grievance procedures was voluntary; he cannot now hope to be heard to complain of being

25   denied that process.")

26   Defendants are unaware of any case law suggesting that Mr. Konig had a right to a

27   hearing before choosing to resign, or that some post-resignation process is required even though

28   none was requested.  Mr. Konig had a process by which he could challenge the discipline

KERR
&
WAGSTAFFE
LLP

1  imposed upon him, but he chose not to use it.  Mr. Konig had a right to a hearing before he could

2  be terminated, but he resigned without requesting a hearing, and thus waived any such rights.  A

3  claim that he was "denied" process by his own decisions is simply incomprehensible.

4      6.   **Konig's Miscellaneous Unpleaded Claims also Do Not Constitute a**
           **Violation of Due Process**

5

6      In addition to the matters discussed above, in answer to interrogatories Konig asserted a

7  vague laundry list of other conduct that purportedly violates his due process rights.  These

8  unpleaded claims display the depths of Konig's misunderstanding of the Fourteenth Amendment.

9      Konig asserts that the State Bar "violated" the MOU when his supervisors questioned

10 him about his work without a union representative present and through alleged picayune

11 procedural irregularities in the first two steps of his abandoned grievance.  The MOU, of course,

12 does not provide employees with the right to have a union representative present whenever their

13 work performance is discussed.  (Hawley Decl. Ex. A.)  More importantly, however, violations

14 of the MOU do not constitute constitutional due process claims.  The Ninth Circuit has

15 repeatedly held that a violation of state procedures does not state a constitutional due process

16 claim.  See, e.g., Dorr v. Butte County, 795 F.2d 875, 877 (1986) ("a substantive property right

17 cannot exist exclusively by virtue of a procedural right.");  Clemente v. United States, 766 F.2d

18 1358, 1365 (9th Cir.1985) (violation of internal procedural regulations does not state a

19 constitutional claim.);  Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984) ("A constitutionally

20 protected interest has been created only if the procedural requirements are intended to be a

21 'significant substantive restriction' on ... decision making.").  Konig did not lose any property

22 right, and the Fourteenth Amendment does not constitutionalize garden variety workplace or

23 contract disputes.  Bishop, 426 U.S. at 349-50.

24     Konig also argues that his due process was violated when defendants "failed" to

25 "properly" investigate his complaints of retaliation and harassment and by conducting a "sham"

26 investigation.  Defendants are confident that there is no evidence to support such an allegation,

27 but it simply doesn't matter.  Konig did not have a property right to the investigation of his

28 complaints.  Thus defendants' investigation – whether fair, biased, or non-existent – cannot form

1    the basis of a due process claim.[13]   See Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002)

2    (arrestee had no due process right to an internal investigation of her excessive force complaint);

3    Jennings v. City of Stillwater, 383 F.3d 1199, 1205-07 (10th Cir. 2004) (crime victim had no due

4    process right to proper investigation of her rape allegations).

5          Finally, in perhaps the strangest claim ever made by an employee, Konig asserts that once

6    he sued Defendants it violated due process for any of them "to make decisions regarding

7    Plaintiff, Plaintiff's rights, privileges, entitlements, and benefits associated with his

8    employment." (Mayorga Decl. Ex. E, p. 9, response # 13.)  In other words, Konig claims that if

9    he sues his supervisor (Blumenthal), his supervisor's supervisor (Dal Cerro), his supervisor's

10   supervisor's supervisor (Weiner), and the overall head of human resources for the Bar (Hawley),

11   that he should thereafter be immune from any management oversight.  Konig obviously has no

12   property interest in being unsupervised and his decision to sue the defendants does not create *any*

13   right to different treatment in the workplace.

14         At bottom, Konig simply cannot demonstrate any denial of procedural due process.  He

15   had no due process right to a hearing before receiving negative evaluations or written warnings

16   that his insubordination would not be tolerated because such actions do not deprive him of any

17   property rights.  He had no due process right to a hearing before his job duties were changed or

18   he was put on a Performance Improvement Program because he had no property right not to have

19   his duties or supervision changed in that manner.  As for his three day suspension, it never

20   occurred.  All that Konig has received is the very *notice* of suspension that he claims he was

21   denied.  And although he had a right to bring a grievance under the MOU, he chose not to take

22   advantage of that right, and instead resigned.  Nor do any of his unpleaded claims constitute

23   violations of due process.  Under these circumstances, Konig's due process claim fails as a

24   matter of law.

25

26   _____

27   [13]     Konig's claim that defendants violated his due process by not investigating his claims is
     bafflingly at odds with his simultaneous claim that it violates his due process rights for any
28   defendant to be part of an investigation into his misconduct.

KERR
&
WACSTAFFE
LLP

**B.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY IN ANY EVENT**

Each of the defendants is also entitled to qualified immunity in any event.  As discussed above, no case has recognized a employee's due process right to notice and a hearing before the type of evaluations or discipline at issue in this case, and defendants believe that no such right exists.  Even if defendants are wrong, however, it is pellucid that Konig's alleged due process rights are not clearly established, and that a reasonable supervisor would believe he or she could engage in the conduct at issue here without first providing a notice and hearing.

### 1.    Three Part Test for Qualified Immunity

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  The Ninth Circuit applies "a three-step test to determine whether a defendant is entitled to qualified immunity on a federal constitutional claim." Brown v. Li, 308 F.3d 939, 946 (9th Cir. 2002).  "First, [the court] must determine whether the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right." Id.  "Next, if the facts alleged show a constitutional violation, [the court] must decide whether the constitutional right at stake was clearly established at the time of the alleged violation." Id. at 947.  "Finally, if the right was clearly established, [the court] assess[es] whether an objectively reasonable government actor would have known that his or her conduct violated the plaintiff's constitutional right." Id.

### 2.    Konig's Alleged Right to a Hearing was Not Clearly Established

Assuming, arguendo, that defendants' conduct did violate some constitutional right, Konig cannot surmount the second hurdle because that right is not clearly established.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  As discussed above, no prior cases have required pre-discipline notice or a hearing in these circumstances.  To the contrary, several cases have held that poor evaluations and changes in job duties or supervision *do not* fall within the due process clause. Gearhart, 768 F.2d at 1074; Carter, 767 F.2d 270; Hitchens, 943 F. Supp. at 413; Lawrence, 665 F.2d at 1325; Germany,

1   2003 WL 22203724; Poole, 2000 WL 1720217 *5; Foster v. Haage, 1987 WL 16979 *2.  In

2   addition, the California Supreme Court has held that suspension *does not* require a prior hearing,

3   Civil Service Assoc., 22 Cal. 3d at 564, which can only mean that discipline short of suspension

4   also does not require such a hearing.[14]

5        "[T]he Ninth Circuit requires that 'due process violations ... be particularized before they

6   can be subjected to the clearly established test.'"  Mason v. Arizona, 260 F. Supp. 2d 807, 824

7   (D. Ariz. 2003) (quoting Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996)).   Even where a

8   property interest is demonstrated, "because procedural due process analysis essentially boils

9   down to an ad hoc balancing inquiry, the law regarding procedural due process claims 'can rarely

10  be considered clearly established at least in the absence of closely corresponding factual and

11  legal precedent.'"  Brewster v. Board of Education of the Lynwood Unified Sch. Dist., 149 F.3d

12  971, 983 (9th Cir. 1998) (quoting Baker v. Racansky, 887 F.2d 183, 187 (9th Cir. 1989)).  In this

13  case, where there is no closely corresponding factual *or* legal precedent supporting Konig's

14  claim, the due process rights claimed by Konig cannot be deemed "clearly established" and

15  defendants are entitled to qualified immunity.

16       **3.    A Reasonable Supervisor Would Believe Konig had No Right to a
              Prior Hearing**

17

18       Finally, even if one assumes a clearly established right, Konig's due process claim still

19  fails the third step in the qualified immunity analysis.  Thus, if "officers of reasonable

20  competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at

21  341.  The Court must place itself in the shoes of the defendant, not view the situation with

22  hindsight or facts unknown to the defendant.   Levenstein v. Salafsky, 164 F.3d 345, 351 (7th

23

-----

24  [14]    As for the "constructive discharge" claim, defendants are not aware of any published
25  Ninth Circuit authority reaching the procedural aspects of such a claim, see Huskey v. City of
    San Jose, 204 F.3d 893, 900-02 (9th Cir. 2000) (finding insufficient evidence of constructive
26  discharge to defeat summary judgment), although at least one unpublished case from June 2003
    rejects it.  While the Ninth Circuit rule against citing unpublished cases prevents defendants from
27  identifying that decision, it seems patent that a rule of law cannot be "clearly established" if it is
    rejected by recent, if unpublished, Ninth Circuit authority.
28

1   Cir. 1998) ("Public officials should not need to have the insight of constitutional law scholars, or

2   the hindsight of Monday morning quarterbacks, to succeed in a qualified immunity defense.");

3   Harris v. Board of Educ., 105 F.3d 591, 596 (11th Cir. 1997) ("the conduct of a government

4   official is judged against the law and facts at the time the defendant acted, not by hindsight based

5   on later events.").

6          The MOU is very clear on these points.  Konig's performance evaluations, PIP, and work

7   assignments fall within management discretion.  (MOU § 10(B), 17(K).)  These actions are not

8   even the proper subject of a grievance.  (MOU § 17(K).)  As for the written warnings and

9   suspension, these acts are subject to the grievance procedure but Konig did not follow it.  (MOU

10  § 17; Dal Cerro Decl. ¶¶ 10-11, 15; Hawley Decl. ¶¶ 7-9.)  In the absence of clear prior case law

11  to the contrary, a reasonable supervisor is entitled to rely on the terms of the MOU.   At the very

12  least, a reasonable supervisor could believe that Konig had no right to notice and a hearing

13  before the disciplinary acts he now challenges.  For this reason too, defendants are entitled to

14  qualified immunity, and thus summary judgment on Konig's due process claim.

15  **V.     CONCLUSION**

16         When a public employee cannot be fired without cause, the due process clause protects

17  the employee's right to continued employment by requiring a notice and hearing before

18  termination.  That rule, however, does not apply to lesser discipline such as the warning letters at

19  issue here, or to *evaluative* managerial conduct such as performance evaluations, supervision,

20  and changes in work assignments.  Konig's claim that he is entitled to notice and a hearing

21  before *any* criticism or discipline is based on nothing more than his subjective (and frankly

22  unreasonable) notion of "fairness."  Konig's personal ideas about how he should, and should not,

23  be criticized or corrected are not protected by the Constitution.  Accordingly, for the reasons

24  stated above, defendants respectfully request the Court to enter summary judgment in their favor

25  on Konig's procedural due process claim.

26  //

27  //

28  //

1    DATED:   December ___, 2004                **KERR & WAGSTAFFE LLP**

2                                               By   /s Michael von Loewenfeldt
                                                   James M. Wagstaffe
3                                                  Michael von Loewenfeldt
                                                   Emilia Mayorga
4
5                                                  Attorneys for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28