RICHARD M. ROGERS, #045843
MAYO & ROGERS
114 Sansome Street, #1310
San Francisco, CA 94104
Telephone:    415/397-1515
Facsimile:    415/397-1540
Email:        RogersRMR@aol.com

Attorneys for Plaintiff
ALAN KONIG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN KONIG,<br><br>          Plaintiff,<br><br>     v.<br><br>LAWRENCE J. DAL CERRO, RUSSELL WEINER, ALLEN BLUMENTHAL, and ROBERT HAWLEY,<br><br>          Defendants. | **CASE NO. C04-2210 MJJ [ECF]**<br><br>Case filed:    06/04/04<br>Trial date:    11/07/05<br><br>**DECLARATION OF PLAINTIFF RESPONDING TO MISTAKEN REPRESENTATIONS IN REPLY DOCUMENTS RE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        04/26/05<br>Time:        9:30 a.m.<br>Location:    Courtroom 11 |

KONIG/
DM4SUM02.AK2.wpd

Case No. C04-2210 MJJ [ECF] – Declaration of Plaintiff Responding to Mistaken Representations in Reply Documents re Defendants' Motion for Partial Summary Judgment

DECLARATION OF ALAN KONIG

I, Alan Konig, hereby declare and state:

1. I am over eighteen years of age and am the Plaintiff in this matter. I have personal knowledge of the facts stated herein and in those situations where I do not have personal knowledge I have knowledge based on information and belief. The statements made herein are true and correct and if called as a witness, I could and would competently testify thereto.

2. On April 13, 2005, I read the document entitled "Defendants' Evidentiary Objections to January 18, 2005 Declaration of Alan Konig" which was filed with this Court on or about April 12, 2005.

3. In the document, on page 5, line 4 through 16, Defendants have asserted that the statement in my declaration that "[p]rior to making the actual report, I informed supervisors and management that I *would* be doing so" is contradicted by my deposition testimony and they insinuate that my statement is false.[1] To support the assertion, Defendants relied upon, and attached as an Exhibit, page 226, 227, and 235 from my deposition.

4. The statement in my declaration did not assert, nor was it intended to assert, that I provided *specific* notification to supervisors and management that I *was* now sending the complaint to the Commission on Judicial Performance (CJP) and any interpretation of it in that fashion by Defendants is incorrect. Rather, the statement was a reflection of my comments to supervisors and management that I *would* send a complaint or of my *intent* to send a complaint.

5. Additionally, the testimony contained in the excerpted pages provided by Defendants did not address, nor was it responsive to questions about, my statements of intent to supervisors and management that I *would* send a complaint to the CJP. The testimony provided by Defendants was limited solely to the issue of those individuals to whom I provided *specific* notice that I *was* sending a complaint to the CJP.

---

[1]The insinuation is also in footnote 11 of Defendants' reply brief.

-1-

6. The actual testimony from my deposition related to my statements of intent that I *would* send a complaint to the CJP is contained on the pages that are immediately surrounding the pages provided by Defendants. Attached as Exhibit 1 is a true and correct copy of page 218 through 239 of my deposition in this matter in which I testified about the statements of intent I made to supervisors and management that I *would* send a complaint to the CJP, specific notification to a single individual that I *was* sending the complaint, and my understanding of who knew what and when. For instance, I specifically testified that I stated to supervisors and management about sending a complaint to the CJP that "if they weren't or if the office wasn't, then it would leave me no choice but to do it."[2]

7. On page 221, line 6, through page 222, line 5, I was never asked what statements I made at the September 11, 2003 meeting with Defendant Dal Cerro related to my intent to send a complaint to the CJP although the subject of the CJP was specifically raised by the deposition questions and answers.

8. The confusion created at the deposition regarding statements of intent, actual notice, notice to who, knowledge by individuals subsequent to sending the complaint, etc. is reflected in the second excerpt provided by Defendants.[3] While Defendants referenced only line 10 to 15 of page 235 from my deposition, the testimony that followed reflects the confusion surrounding my statements of intent to notify the CJP and the reports themselves to the CJP.[4]

9. In addition to the unsupported insinuation that I provided false statements, Defendants also made an unsupported accusation of misconduct against me in their reply brief filed with this Court. In footnote 6 of the reply brief, Defendants have asserted, without any supporting facts or law, that my "prior complaints and. . .filings in this case are replete with disclosures of the State

---

[2] 223:24-224:1.

[3] I am uncertain how much confusion could be created by my deposition given Defendants' acknowledgment, in paragraph 12 of their Answer to the Second Amended Complaint in this matter, that I notified them of my intent to send a complaint to the CJP.

[4] 235:16-236:1.

1   Bar's work product and internal decision making concerning cases." If Defendants honestly

2   believed such an accusation of misconduct was properly leveled against me then they too would

3   be culpable of the same misconduct given their disclosures in this matter have equaled or

4   exceeded mine and none of the individual Defendants are the holder of the State Bar's attorney-

5   client privilege or work product.

6          10.  Prior to footnote 6 in their reply, Defendants have never once asserted any privilege

7   or work product claim to anything I have provided nor have they ever indicated who the holder of

8   any such privilege or work product doctrine is and what his/her determinations are on any given

9   statement, document, or item.

10          I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and accurate. Executed this 15th day of April, 2005 at San Francisco, California.

12

13                                                       _____

14                                                       Alan Konig

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                -3-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Page 217**

1    A. Yes. It's part of the November 26th, 2003    03:26 PM
2  complaint to the Board of Governors and the    03:26 PM
3  legislature.    03:26 PM
4    Q. You had asked Mr. Dal Cerro to give you    03:27 PM
5  something in writing after the September meeting,    03:27 PM
6  correct?    03:27 PM
7    A. Yes.    03:27 PM
8    Q. Did you have an objection that Mr. Dal Cerro    03:27 PM
9  did that?    03:27 PM
10    A. I'm sorry? Did I have an objection?    03:27 PM
11    Q. Yes.    03:27 PM
12    A. Did I have an objection to him providing me    03:27 PM
13  something I requested?    03:27 PM
14    Q. Correct.    03:27 PM
15    A. No.    03:27 PM
16    Q. What was there about the October 31 memo with    03:27 PM
17  which you disagreed?    03:27 PM
18    A. Essentially the entirety of it.    03:27 PM
19    Q. Tell me what specifically you can remember    03:27 PM
20  that was inappropriate in that memorandum?    03:27 PM
21    A. If you could provide me with a copy of my    03:27 PM
22  November 18th, 2003 memo, I can tell you specifically.    03:27 PM
23    Q. We can take a -- why don't we take a break or    03:27 PM
24  pause for a moment and see if we can find the    03:27 PM
25  memorandum. It was in the stack of documents that    03:28 PM

**Page 218**

1  have been given to me that have been produced.    03:28 PM
2    While that's being looked up, let me ask you    03:28 PM
3  a question. Prior to the meeting of the 31st of --    03:28 PM
4  excuse me.    03:28 PM
5    Prior to receiving the memorandum dated    03:28 PM
6  October 31st, 2003, had you had a meeting with    03:28 PM
7  Mr. Nisperos?    03:28 PM
8    A. No.    03:28 PM
9    Q. Do you recall any meeting with Mr. Nisperos    03:28 PM
10  and others in which you mentioned the CJP complaint?    03:28 PM
11    A. At any time or prior to --    03:28 PM
12    Q. Prior to your filing of the CJP.    03:28 PM
13    A. Oh, yes.    03:28 PM
14    Q. Tell me when you first raised that subject?    03:28 PM
15    A. I first raised that subject in the spring of    03:29 PM
16  2003. I couldn't tell you a specific month.    03:29 PM
17    Q. With whom did you raise it?    03:29 PM
18    A. Mr. Dal Cerro.    03:29 PM
19    Q. How did you raise it?    03:29 PM
20    A. It was during discussions about some of the    03:29 PM
21  rulings that were being made by the Court and how to    03:29 PM
22  proceed on them. And I specifically mentioned that it    03:29 PM
23  is something that needs to be addressed by the CJP and    03:29 PM
24  asked him to do that.    03:29 PM
25    Q. Did you make any notes of that conversation?    03:29 PM

**Page 219**

1    A. Not that conversation, no. Not any of those    03:29 PM
2  conversations, actually.    03:29 PM
3    Q. Did you make any notes -- do you have any    03:29 PM
4  documents that could refresh your recollection as to    03:29 PM
5  the date that communication took place?    03:30 PM
6    A. I believe the first discussion would have    03:30 PM
7  been related to the Bajaj matter prior to -- after the    03:30 PM
8  Court had issued its order precluding Judge Abrams    03:30 PM
9  from testifying and the time that I filed the motion    03:30 PM
10  for reconsideration. So it would have been between    03:30 PM
11  those two events.    03:30 PM
12    Q. Where were you when the conversation took    03:30 PM
13  place?    03:30 PM
14    A. Mr. Dal Cerro's office.    03:30 PM
15    Q. How long did the conversation last?    03:30 PM
16    A. Five, ten minutes.    03:30 PM
17    Q. What can you recall saying about the CJP and    03:30 PM
18  possible complaint against the judge in that    03:30 PM
19  conversation?    03:30 PM
20    A. I can't give you specific words, but they    03:31 PM
21  were words to the effect of the rulings by the Court    03:31 PM
22  have become so biased and have reached the extent of    03:31 PM
23  depriving the State Bar of due process and a fair    03:31 PM
24  trial in the matter and go beyond something that's    03:31 PM
25  simply a matter to be addressed within the court and    03:31 PM

**Page 220**

1  something that CJP should take a look at.    03:31 PM
2    Q. What did Mr. Dal Cerro?    03:31 PM
3    A. I believe his only response was, "We'll    03:31 PM
4  address it in the motion for reconsideration," which    03:31 PM
5  is what we were discussing at the time.    03:31 PM
6    Q. Did you disagree with that? Strike that.    03:31 PM
7    Did you express your disagreement with    03:31 PM
8  Mr. Dal Cerro?    03:31 PM
9    A. I don't believe I did, no.    03:32 PM
10    Q. Did you file a CJP complaint within a week of    03:32 PM
11  making that request?    03:32 PM
12    A. No.    03:32 PM
13    Q. When did you next discuss a CJP complaint    03:32 PM
14  with anyone in the office?    03:32 PM
15    A. I'm doing this off the top of my head. I    03:32 PM
16  don't -- if I looked at again the chronology of    03:32 PM
17  events, I can give you a more specific idea. But I    03:32 PM
18  believe the next time that it occurred was September    03:32 PM
19  11th, 2003.    03:32 PM
20    Q. Do you have something in writing that would    03:32 PM
21  refresh your recollection that it was, in fact,    03:32 PM
22  September 11th, 2003?    03:32 PM
23    A. The complaints that I did submit to the Board    03:33 PM
24  of Governors and the legislature.    03:33 PM
25    Q. Your memory is that there is something in    03:33 PM

ALAN KONIG - CONFIDENTIAL

EXHIBIT

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  writing that would reflect you mentioned the CJP on or   03:33 PM
2  about September 11th, correct?   03:33 PM
3      A. I think the chronology of documents and   03:33 PM
4  events there -- I don't believe there's anything   03:33 PM
5  specifically in writing that mentions it, no.   03:33 PM
6      Q. All right. So on September 11th, who did you   03:33 PM
7  speak with on that subject?   03:33 PM
8      A. That was Mr. Dal Cerro.   03:33 PM
9      Q. Where did that conversation take place?   03:33 PM
10     A. In my office.   03:33 PM
11     Q. You can recall it's September 11th because it   03:33 PM
12  was the same day you prepared the memorandum, right?   03:33 PM
13     A. Yeah. It was a meeting in response to my   03:33 PM
14  memorandum.   03:33 PM
15     Q. On September 11th you raised the subject of   03:33 PM
16  the CJP, right?   03:33 PM
17     A. Yes.   03:33 PM
18     Q. Did Mr. Dal Cerro respond to that?   03:33 PM
19     A. No.   03:33 PM
20     Q. Did he instruct you not to do it yourself?   03:33 PM
21     A. No.   03:34 PM
22     Q. Were you satisfied with his answer on the   03:34 PM
23  subject as to the CJP complaint?   03:34 PM
24     A. He didn't provide an answer.   03:34 PM
25     Q. Did you ask the office to file it in the   03:34 PM

Page 221

1  meeting?   03:34 PM
2      A. No.   03:34 PM
3      Q. Was there anybody else present at that   03:34 PM
4  meeting?   03:34 PM
5      A. No.   03:34 PM
6      Q. When is the next time the subject gets   03:34 PM
7  raised?   03:34 PM
8      A. Do you want me to limit it to just verbal   03:34 PM
9  discussions?   03:34 PM
10     Q. Communicate, which would include verbal or in   03:34 PM
11  writing.   03:34 PM
12     A. Okay.   03:34 PM
13     Q. Smoke signal if you did it that way.   03:34 PM
14     A. I think the next time it was mentioned was   03:35 PM
15  the October 29th meeting.   03:35 PM
16     Q. That was a meeting in Mr. Nisperos' office   03:35 PM
17  between yourself, Mr. Steedman, Mr. Dal Cerro, and   03:35 PM
18  Mr. Blumenthal, correct?   03:35 PM
19     A. Right.   03:36 PM
20     Q. They were all there for the entirety of the   03:36 PM
21  meeting, correct?   03:36 PM
22     A. No. At some point Mr. Blumenthal got up to   03:36 PM
23  go to his office to retrieve, I believe it was, the   03:36 PM
24  Code of Civil Procedure or the Civil Code.   03:36 PM
25     Q. Mr. Blumenthal, however, was presented when   03:36 PM

Page 222

1  the subject of the CJP came up, wasn't he?   03:36 PM
2      A. I believe so.   03:36 PM
3      Q. What did you say --   03:36 PM
4      A. I'm sorry. I'm not certain about that.   03:36 PM
5      Q. What did you say about the CJP in that   03:36 PM
6  meeting, that you can recall?   03:36 PM
7      A. Well, this was a meeting, actually, that was   03:36 PM
8  supposed to have been to discuss the Mendez matter but   03:36 PM
9  instead turned into the three of them making again   03:36 PM
10  unfounded accusations and allegations and bringing up   03:36 PM
11  issues with -- it's kind of a detailed history that   03:36 PM
12  led to the meeting.   03:36 PM
13     There was a decision issued by the Court in   03:36 PM
14  the Mendez matter that disregarded Supreme Court   03:37 PM
15  precedent and essentially created a contract out of   03:37 PM
16  thin air between Mr. Mendez and his client.   03:37 PM
17     In discussing that aspect of the Court's   03:37 PM
18  decision, I again brought up the fact that the Court   03:37 PM
19  is disregarding binding Supreme Court precedent,   03:37 PM
20  creating contracts out of thin air and it needs to be   03:37 PM
21  addressed by the CJP.   03:37 PM
22     Q. Did you advise them that you were going to   03:37 PM
23  file an action with the CJP -- complaint?   03:37 PM
24     A. I believe I stated if they weren't or if the   03:37 PM
25  office wasn't, then it would leave me no choice but to   03:37 PM

Page 223

1  do it.   03:37 PM
2      Q. Did they instruct you not to do it --   03:37 PM
3  anybody?   03:37 PM
4      A. I don't believe there was an instruction not   03:37 PM
5  to do it, no.   03:37 PM
6      Q. What did they say -- or if you can identify   03:37 PM
7  the person that will be helpful if you can remember   03:37 PM
8  it -- in response to your statement about the CJP?   03:37 PM
9      A. There were a couple of statements that I   03:37 PM
10  viewed as discouragement, one being that the CJP won't   03:38 PM
11  do anything about this anyway, and the other one being   03:38 PM
12  a specific reference to Victoria -- Henley I believe   03:38 PM
13  is her last name -- the head of the CJP and that she   03:38 PM
14  wouldn't care type statement.   03:38 PM
15     Q. Did you know Ms. Henley before this meeting?   03:38 PM
16     A. No.   03:38 PM
17     Q. Was that the first time you ever heard the   03:38 PM
18  name?   03:38 PM
19     A. Yes.   03:38 PM
20     Q. And --   03:38 PM
21     A. I might not even have it right now.   03:38 PM
22     Q. Nevertheless, despite making those statements   03:38 PM
23  of discouragement, no one said you couldn't do it,   03:38 PM
24  right?   03:38 PM
25     A. No.   03:38 PM

Page 224

56 (Pages 221 to 224)

ALAN KONIG - CONFIDENTIAL

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q. You didn't tell anyone you were going to do     03:38 PM
2  it, right?                                      03:38 PM
3    A. Not at that meeting, no.                  03:38 PM
4    Q. All right. Now, you did, in fact, file a   03:38 PM
5  complaint with the CJP, correct?               03:38 PM
6    A. Yes.                                      03:39 PM
7    MR. ROGERS: If we're going to talk about it,  03:39 PM
8  I want this portion of the deposition to be attorneys'  03:39 PM
9  eyes only, and if there's anybody here who's connected  03:39 PM
10  with the State Bar, I request that they not be    03:39 PM
11  present.                                        03:39 PM
12    MR. WAGSTAFFE: Well, that's if I talk about   03:39 PM
13  the contents. Do you agree also with the timing   03:39 PM
14  issues?                                         03:39 PM
15    MR. ROGERS: It's only content.             03:39 PM
16    MR. WAGSTAFFE: If I get there, you stop me   03:39 PM
17  before the answer comes and we'll ask Mr. Dal Cerro to  03:39 PM
18  leave and have our stenographer swear under oath.'  03:39 PM
19    Q. What date did you file it?              03:39 PM
20    A. I mailed it November 3rd, I believe.    03:39 PM
21    Q. Did you tell anybody at the CJP that you were  03:39 PM
22  going to do it before you did it?              03:39 PM
23    A. The CJP?                                03:39 PM
24    Q. Yes.                                    03:39 PM
25    A. No.                                     03:39 PM

Page 225

1    Q. Did you tell anybody at the State Bar that   03:40 PM
2  you were going to file the CJP complaint before you  03:40 PM
3  did it?                                         03:40 PM
4    A. Yes.                                      03:40 PM
5    Q. Who did you tell?                        03:40 PM
6    A. Lynne Thingvold.                         03:40 PM
7    Q. What did you tell her?                   03:40 PM
8    A. That I was filing a complaint with the CJP.  03:40 PM
9    Q. Just if you can answer the question, because  03:40 PM
10  I don't want to get into the content. Did you tell   03:40 PM
11  her what the content was of the complaint you were   03:40 PM
12  filing with the CJP?                           03:40 PM
13    A. Not in specific terms, no. I might have in   03:40 PM
14  general terms.                                 03:40 PM
15    Q. Did you tell Ms. Thingvold to keep that   03:40 PM
16  information you communicated confidential?     03:40 PM
17    A. I don't believe I did, no.             03:40 PM
18    Q. Did you tell anyone else other than      03:40 PM
19  Ms. Thingvold at the State Bar or otherwise that you   03:40 PM
20  were filing a CJP complaint against Judge Remke?   03:40 PM
21    A. I believe she's the only one.          03:41 PM
22    Q. What did Mr. Thingvold say to you when you   03:41 PM
23  told her this?                                 03:41 PM
24    A. I actually don't remember what she said. I   03:41 PM
25  think she just reacted with something to the effect   03:41 PM

Page 226

1  of, oh, really or something. It wasn't anything     03:41 PM
2  detailed, I know that.                          03:41 PM
3    Q. To your knowledge did -- other than the   03:41 PM
4  filing of this lawsuit, to your knowledge, did anybody   03:41 PM
5  at the OCTC become aware of your filing the CJP   03:41 PM
6  complaint after you filed it?                   03:41 PM
7    A. Yes.                                      03:41 PM
8    Q. Who became aware, to your knowledge?     03:41 PM
9    A. A couple -- more than a couple -- several of   03:41 PM
10  the attorneys in the office.                    03:41 PM
11    Q. Who were they?                          03:41 PM
12    A. Maria Thorpasa; Tammy Albertson Murray;   03:42 PM
13  Wonder, W-O-N-D-E-R, Leang. I think every -- I think   03:42 PM
14  all of the attorneys in the office know now. But you   03:42 PM
15  want me to limit it to --                       03:42 PM
16    Q. I really want you to answer my question.   03:42 PM
17  When I get to that I will ask you.             03:42 PM
18    My question is, who do you know became aware   03:42 PM
19  of the filing of the CJP complaint.            03:42 PM
20    As I said before, you filed your complaint in   03:42 PM
21  this action and participated in a newspaper article.   03:42 PM
22    A. Well, initially I know those three had   03:43 PM
23  knowledge of it within a few days to a week of the   03:43 PM
24  filing. And then just through talk within the office   03:43 PM
25  and rumor, I think all of the attorneys knew.   03:43 PM

Page 227

1    Q. You say that it was common knowledge through   03:43 PM
2  talk in the office. I want you to be specific. What   03:43 PM
3  talk in the office was brought to your attention? Who   03:43 PM
4  said it, and when did they say it to you?       03:43 PM
5    A. I don't recall specific dates. There's just   03:43 PM
6  no way to give you specific dates. But I do recall   03:43 PM
7  having conversations with Ms. Albertson Murray and   03:43 PM
8  with Maria Orabesa and also with Mr. Leang.     03:43 PM
9    Then the information as to how other         03:44 PM
10  attorneys knew of it was just from what I heard other   03:44 PM
11  people say. So I don't have actual conversations with   03:44 PM
12  the other attorneys that they said that they knew. It   03:44 PM
13  was just rumor among the office.               03:44 PM
14    Q. Well, other than the three people whose names   03:44 PM
15  you've identified and the one person you told, can you   03:44 PM
16  tell me now the name of one person who you know knew   03:44 PM
17  it?                                            03:44 PM
18    A. Aside from -- you asked me --           03:44 PM
19    Q. You've listed four people. You told       03:44 PM
20  Ms. Thingvold. You listed three people who       03:44 PM
21  communicated to you that they became aware of a CJP   03:44 PM
22  complaint. Other than those four people, can you   03:44 PM
23  identify anyone, as you sit here now, who you know   03:44 PM
24  became aware of it prior to the filing of this   03:45 PM
25  lawsuit?                                        03:45 PM

Page 228

57 (Pages 225 to 228)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A. Aside from the defendants?          03:45 PM
2    Q. Anybody.          03:45 PM
3    A. Well, the defendants.          03:45 PM
4    Q. They told you they were aware of it?          03:45 PM
5    A. It was referenced in several of the documents   03:45 PM
6    that I submitted to the defendants.          03:45 PM
7    Q. Let's take it one at a time. Do you know how   03:45 PM
8    many of the -- Ms. Thingvold you told, right?          03:45 PM
9    A. Yes.          03:45 PM
10   Q. You can't remember whether you told her to   03:45 PM
11   keep it confidential or not, right?          03:45 PM
12   A. Right.          03:45 PM
13   Q. You understand, do you not, that while it may   03:45 PM
14   be a confidential proceeding, you are authorized to   03:45 PM
15   disclose your own complaint if you so choose, right?   03:45 PM
16   A. Right.          03:45 PM
17   Q. You so chose with Ms. Thingvold, right?          03:45 PM
18   A. No, because I never gave her a copy of it,   03:45 PM
19   and I actually discussed it with her before I had   03:45 PM
20   actually completed it or submitted it.          03:45 PM
21   Q. As to the other three people you've          03:45 PM
22   identified -- Tammy, Maria, and Mr. Leang -- did they   03:45 PM
23   ever tell you how they learned of it?          03:46 PM
24   A. No.          03:46 PM
25   Q. As you sit here now, do you have any          03:46 PM

Page 229

1    information as to how they learned of it?          03:46 PM
2    A. No.          03:46 PM
3    Q. You don't know whether any of the defendants   03:46 PM
4    told them, do you?          03:46 PM
5    A. No.          03:46 PM
6    Q. You don't know whether Ms. Thingvold may have   03:46 PM
7    been the source, correct?          03:46 PM
8    A. No.          03:46 PM
9    Q. Were you the source?          03:46 PM
10   A. No.          03:46 PM
11   Q. And --          03:46 PM
12   A. Well, to Ms. Thingvold, yes.          03:46 PM
13   Q. Let's talk about Maria. When Maria -- you   03:46 PM
14   had a conversation with her where she acknowledged   03:46 PM
15   awareness, right?          03:46 PM
16   A. I believe she actually brought it up and   03:46 PM
17   said, You filed a complaint with the CJP on Remke.   03:46 PM
18   Q. You say you believe. I want to probe your   03:46 PM
19   memory. Are you guessing, or is that actually your   03:46 PM
20   memory?          03:46 PM
21   A. That's what I can remember happening.          03:46 PM
22   Q. Where did it happen?          03:46 PM
23   A. In my office.          03:46 PM
24   Q. When?          03:46 PM
25   A. It would have been within, I believe, a week   03:46 PM

Page 230

1    of my filing of the complaint, so by November 10th.   03:47 PM
2    Q. Did you say anything to her?          03:47 PM
3    A. I acknowledged that I had done it.          03:47 PM
4    Q. Okay. Did you say anything else?          03:47 PM
5    A. No.          03:47 PM
6    Q. Did anything else come up in the conversation   03:47 PM
7    that related to the CJP complaint?          03:47 PM
8    A. I don't believe so, no.          03:47 PM
9    Q. Have you ever spoken with Maria again about   03:47 PM
10   it to the present moment?          03:47 PM
11   A. About the CJP complaint?          03:47 PM
12   Q. Yes.          03:47 PM
13   A. I think we have had conversations about it,   03:47 PM
14   yes.          03:47 PM
15   Q. When was your next conversation with Maria   03:47 PM
16   after the one you just described?          03:47 PM
17   A. I really have no idea.          03:47 PM
18   Q. Before or after you filed this lawsuit?          03:47 PM
19   A. Before.          03:47 PM
20   Q. You told her about the contents of the CJP   03:47 PM
21   complaint, right?          03:48 PM
22   A. No.          03:48 PM
23   Q. Did you ever tell her even a word about the   03:48 PM
24   contents of the CJP complaint?          03:48 PM
25   A. No.          03:48 PM

Page 231

1    Q. How about Tammy? How about Tammy; when did   03:48 PM
2    it first come up with her?          03:48 PM
3    A. It was right around the same time as with   03:48 PM
4    Maria.          03:48 PM
5    Q. Where were you?          03:48 PM
6    A. Again in my office.          03:48 PM
7    Q. Did she raise the subject first?          03:48 PM
8    A. Right.          03:48 PM
9    Q. What did you say?          03:48 PM
10   A. It was the same type of conversation with   03:48 PM
11   Tammy as it was with Maria where she said something to   03:48 PM
12   the effect, I can't believe you filed a complaint with   03:48 PM
13   the CJP.          03:48 PM
14   Q. What did you say?          03:48 PM
15   A. I just acknowledged that I had.          03:48 PM
16   Q. Did she express to you why she couldn't   03:48 PM
17   believe you had filed a complaint with the CJP against   03:48 PM
18   one of the two judges of the State Bar Court your   03:48 PM
19   office had to interact with?          03:48 PM
20   A. Right.          03:48 PM
21   Q. What did she say?          03:48 PM
22   A. Well, her expression --          03:48 PM
23   MR. ROGERS:  What did she say.          03:48 PM
24   THE WITNESS:  I'm paraphrasing, I suppose, to   03:48 PM
25   some the extent that, I can't believe you had the   03:48 PM

Page 232

58 (Pages 229 to 232)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    bails to do something like that.          03:49 PM
2    BY MR. WAGSTAFFE:          03:49 PM
3      Q. All right. Can you recall anything else she    03:49 PM
4    said?          03:49 PM
5      A. No. I think it was limited to just her    03:49 PM
6    comments that she couldn't believe that I had done it  03:49 PM
7    and my acknowledgment that I had.          03:49 PM
8      Q. The conversation was what, 30 seconds long?  03:49 PM
9      A. Probably. I mean, I think we discussed other  03:49 PM
10   things, but limited to the CJP that was about it.    03:49 PM
11     Q. How about Mr. Leon or Leang?          03:49 PM
12     A. I believe his comment was just in passing,    03:49 PM
13   actually.          03:49 PM
14     Q. When was it?          03:49 PM
15     A. It wasn't even a conversation; it was just a  03:49 PM
16   comment.          03:49 PM
17     Q. When was it?          03:49 PM
18     A. It was right around the same time as with  03:49 PM
19   Maria and Tammy.          03:49 PM
20     Q. Did either Tammy or Mr. Leang tell you where  03:49 PM
21   they obtained this information from?          03:49 PM
22     A. No.          03:49 PM
23     Q. As you sit here now, you have no knowledge  03:49 PM
24   that any of the defendants was the source of the    03:49 PM
25   information to them, right?          03:50 PM

Page 233

1      A. No.          03:50 PM
2      Q. Now, you mentioned the defendants. What    03:50 PM
3    defendant has raised the subject with you of the CJP  03:50 PM
4    complaint, other than the ones we talked about that  03:50 PM
5    occurred before you filed it?          03:50 PM
6      A. We had a discussion. I believe it was March  03:50 PM
7    16th of 2004. And it was during -- it was after a  03:50 PM
8    senior attorney meeting. And one of the items on the  03:50 PM
9    senior attorney meeting's agenda was the Court's    03:50 PM
10   decision in the Wells matter. And after the meeting  03:50 PM
11   was concluded, Mr. Dal Cerro requested that I stay in  03:50 PM
12   the room to discuss the Wells matter, and we had again  03:50 PM
13   a discussion about the CJP.          03:50 PM
14     Q. You say, we had discussion. Isn't it a fact,  03:51 PM
15   that since you heard that these three people had known  03:51 PM
16   about it, that you raised the subject of the CJP with  03:51 PM
17   Mr. Dal Cerro; isn't that right?          03:51 PM
18     A. At that meeting it was -- it was more of a  03:51 PM
19   disagreement again about the Court's decision and what  03:51 PM
20   approach the office should take with the Court's    03:51 PM
21   decision and in particular with the Court's          03:51 PM
22   characterizations of the former clients who testified  03:51 PM
23   in that matter as being not credible, without citing  03:51 PM
24   to any supporting facts or evidence for that    03:51 PM
25   conclusion, which I thought was incredibly offensive  03:51 PM

Page 234

1    to the former clients.          03:51 PM
2      I requested that that be addressed with the    03:51 PM
3    review department, and that request was immediately  03:51 PM
4    denied. And we had discussion about that I thought  03:51 PM
5    that that was improper for a judge to do and that if  03:52 PM
6    the office didn't think that it was something that  03:52 PM
7    should be addressed by the review department, then the  03:52 PM
8    office left me no choice but to have it addressed by  03:52 PM
9    an outside agency, the CJP.          03:52 PM
10     Q. In your discussion of March 16th, 2004 with  03:52 PM
11   Mr. Dal Cerro, did you tell him that you had already  03:52 PM
12   filed the CJP complaint?          03:52 PM
13     A. I don't think I said that, no. I think I    03:52 PM
14   just said, You leave me no choice but to have it    03:52 PM
15   addressed by the CJP.          03:52 PM
16     Q. So although you had already had it on file  03:52 PM
17   for four months, you used language to leave him to  03:52 PM
18   conclude that you were going to file; it isn't that  03:52 PM
19   right?          03:52 PM
20     A. I'm sorry? That I was going to file an    03:52 PM
21   initial complaint or a complaint specific to the Wells  03:52 PM
22   decision?          03:53 PM
23     Q. So you were referring in that conversation to  03:53 PM
24   a follow-up complaint with the CJP?          03:53 PM
25     A. Yes. I was referring specifically only to  03:53 PM

Page 235

1    the Court's decision in the Wells matter.          03:53 PM
2      Q. I'm going to read you from your complaint,  03:53 PM
3    your first-amended complaint. I'll be happy to give  03:53 PM
4    it to you after I read it.          03:53 PM
5      Paragraph 14 of your complaint (Reading):    03:53 PM
6        Plaintiff formally complained to the CJP    03:53 PM
7        on November 3rd, 2003. Despite the    03:53 PM
8        confidentiality requirements of the CJP,    03:53 PM
9        Plaintiff's complaint to the CJP quickly    03:53 PM
10       became common knowledge within OCTC, and  03:53 PM
11       Plaintiff was required to confirm that he  03:53 PM
12       had filed a complaint with the CJP.    03:53 PM
13     Do you recall that allegation?          03:53 PM
14     A. Sure.          03:53 PM
15     Q. When you say you were required to confirm,  03:53 PM
16   isn't it true that once you learned that these three  03:53 PM
17   people had made comments in passing about the CJP you  03:53 PM
18   then raised the subject affirmatively with          03:53 PM
19   Mr. Dal Cerro; isn't that right?          03:53 PM
20     A. You're going to have to rephrase that    03:53 PM
21   question because you got two different things going on  03:54 PM
22   there in that question. You've got whether I was    03:54 PM
23   required to affirmatively state that I had filed a  03:54 PM
24   complaint, and then you moved over into something  03:54 PM
25   about Mr. Dal Cerro.          03:54 PM

Page 236

59 (Pages 233 to 236)

ALAN KONIG - CONFIDENTIAL

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 1    Q. Isn't it a fact that once you learned from    03:54 PM<br>2   these three individuals they were aware of the CJP    03:54 PM<br>3   complaint, you were the one who raised the subject    03:54 PM<br>4   affirmatively in disclosure to Mr. Dal Cerro that you    03:54 PM<br>5   had filed a CJP complaint?    03:54 PM<br>6    A. No. You're misread reading that.    03:54 PM<br>7    Q. When the complaint says, "plaintiff was    03:54 PM<br>8   required to confirm," what did you mean by the phase,    03:54 PM<br>9   "was required to confirm that he had filed a complaint    03:54 PM<br>10   with the CJP"?    03:54 PM<br>11    A. When people in the office asked me about it    03:54 PM<br>12   and the fact that I had done it, I truthfully told    03:54 PM<br>13   them that I had.    03:54 PM<br>14    Q. That would be the three people you've been    03:54 PM<br>15   able to identify here, correct?    03:54 PM<br>16    A. Yes.    03:54 PM<br>17    Q. You identified that to them truthfully within    03:54 PM<br>18   approximately one week of your having filed the    03:54 PM<br>19   complaint, correct?    03:54 PM<br>20    A. Yes.    03:54 PM<br>21    Q. Between that date in mid-November of 2003 and    03:55 PM<br>22   March 2004, over four months, you never had a    03:55 PM<br>23   discussion with anybody at OCTC who are defendants in    03:55 PM<br>24   this action about that subject, did you?    03:55 PM<br>25    A. Not a verbal discussion. It was in written    03:55 PM<br><br><div align="center">Page 237</div> | 1    A. Sorry. That's right.    03:56 PM<br>2    Q. Very good. Mr. Blumenthal never communicated    03:56 PM<br>3   to you in any way that he was upset or even aware of    03:56 PM<br>4   the filing of a CJP complaint by you, correct?    03:56 PM<br>5    A. That's correct.    03:56 PM<br>6    Q. Mr. Dal Cerro -- strike that.    03:56 PM<br>7    Mr. Holly never communicated to you that he    03:56 PM<br>8   was upset or even aware of your filing a CJP    03:56 PM<br>9   complaint, correct?    03:56 PM<br>10    A. That's correct.    03:56 PM<br>11    Q. Mr. Dal Cerro never communicated to you at    03:56 PM<br>12   any time after November 3 of 2003 that he was upset or    03:56 PM<br>13   otherwise aware of the CJP complaint you had filed;    03:56 PM<br>14   isn't that right?    03:56 PM<br>15    A. I think that's correct, yes.    03:56 PM<br>16    Q. Let's go back to our exhibits.    03:57 PM<br>17   We have marked previously as Exhibit 6 --    03:57 PM<br>18   THE REPORTER: 6.    03:57 PM<br>19   MR. WAGSTAFFE: Let's mark as Exhibit 7 --    03:57 PM<br>20   (Defendants' Exhibit 7 marked for    03:57 PM<br>21   identification by the Court Reporter.)    03:57 PM<br>22   BY MR. WAGSTAFFE:    03:57 PM<br>23    Q. Mr. Konig, I put before you is Defendants'    03:57 PM<br>24   Exhibit 7, which is a document dated October 31, 2003    03:58 PM<br>25   from Mr. Dal Cerro to you. I'll note that it appears    03:58 PM<br><br><div align="center">Page 239</div> |
| 1   memorandum.    03:55 PM<br>2    Q. They never had it with you, did they? Never    03:55 PM<br>3   discussed it with you, complained about it, did they?    03:55 PM<br>4    A. No verbal discussions, no.    03:55 PM<br>5    Q. No one has ever had any communication with    03:55 PM<br>6   you, have they, in which they complained to you after    03:55 PM<br>7   the fact that you filed a CJP complaint -- that is    03:55 PM<br>8   someone who is a defendant in this action -- right?    03:55 PM<br>9    A. Not specifically with -- no specific    03:55 PM<br>10   reference to the CJP, no.    03:55 PM<br>11    Q. Mr. Nisperos never mentioned it to you, did    03:55 PM<br>12   he?    03:55 PM<br>13    A. Mr. Nisperos hasn't had a single conversation    03:55 PM<br>14   with me about anything from the very beginning.    03:55 PM<br>15    Q. I have a question; I want you to answer it.    03:55 PM<br>16   You can provide more information, but the answer to my    03:55 PM<br>17   question is that Mr. Nisperos never mentioned it to    03:55 PM<br>18   you, did he?    03:55 PM<br>19    A. No.    03:56 PM<br>20    Q. Mr. Weiner never mentioned it to you? That    03:56 PM<br>21   is, he never mentioned he had any concerns, complaints    03:56 PM<br>22   or awareness that you had filed a complaint with the    03:56 PM<br>23   CJP; isn't that right?    03:56 PM<br>24    A. No.    03:56 PM<br>25    Q. Is that correct?    03:56 PM<br><br><div align="center">Page 238</div> | 1   to have Mr. Dal Cerro's initials next to his name.    03:58 PM<br>2   This is defendants' 1200 and 1201.    03:58 PM<br>3   I would like you to take Exhibit 7 and    03:58 PM<br>4   Exhibit 6 and put them side by side.    03:58 PM<br>5   Do you see them?    03:58 PM<br>6    A. Okay.    03:58 PM<br>7    Q. On page one of each exhibit, other than the    03:58 PM<br>8   initials -- other than the initials and the pagination    03:58 PM<br>9   is there any text of the memo that's different?    03:58 PM<br>10    A. Yes.    03:58 PM<br>11    Q. Tell me.    03:58 PM<br>12    A. If you look at Exhibit 6, the last sentence    03:58 PM<br>13   on that page ends with, "the chief trial counsel has    03:58 PM<br>14   delegated to individual attorneys," but on Exhibit 7    03:58 PM<br>15   that's the next-to-the-last sentence.    03:58 PM<br>16    Q. Okay. Well, take a look at the whole    03:58 PM<br>17   document, both -- all three pages of 6 and the two    03:58 PM<br>18   pages of 7. Tell me what's different between the two    03:59 PM<br>19   documents.    03:59 PM<br>20    A. Well, do you want to take a break while I    03:59 PM<br>21   read them both? This is something that's going to    03:59 PM<br>22   take a while.    03:59 PM<br>23    Q. Let me see if I can do it this way. We can    03:59 PM<br>24   do it on our own, I suppose.    03:59 PM<br>25   The "from" line on Exhibit 7 has initials    03:59 PM<br><br><div align="center">Page 240</div> |

ALAN KONIG - CONFIDENTIAL